IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID C. ROBINSON,                  :
          *Plaintiff*,                :        CIVIL ACTION
                                    :
    v.                             :
                                    :
MONDELEZ INT'L, INC.,               :        No. 15-6057
          *Defendant*.              :

## MEMORANDUM

PRATTER, J.                                                JANUARY 11, 2017

      David Robinson claims that his former employer, Mondelez International, terminated his employment because of his age. Mondelez now seeks summary judgment in its favor, arguing that it had a legitimate, non-discriminatory reason to terminate Mr. Robinson's employment, given his less-than-stellar track record. Mr. Robinson counters that his job performance was good and that there were younger employees with worse performance issues whose employments were not terminated. After hearing oral argument, the Court will grant the motion.

### BACKGROUND

      David Robinson claims that he was terminated from his job as a sales representative for Mondelez International, one of the world's largest snack companies, on September 26, 2014 because of his age. He was sixty-two (62) years old. As a sales representative, it was Mr. Robinson's responsibility to order products for stores within his territory, stock the shelves, rotate products and remove "out of code" (or expired) products, and build relationships with store managers. From June 2010 through April 2014, Mr. Robinson reported to Joe Shiller. In 2010, Mr. Robinson failed to meet his sales objectives and received a performance review that stated he "partially meets expectations." In 2011, he received a "meets expectations" rating.

1

In January 2012, Mr. Robinson was disciplined for "theft of company time" in connection with an audit of his GPS system, and he was placed on final warning. Another employee who was younger than Mr. Robinson was fired for the same offense at around the same time. Mr. Robinson contends that his misuse of the GPS system was due to not understanding the technology and not receiving appropriate training for using it, not to any intent to cheat the company. However, at his deposition, he also stated that the discipline relating to the GPS incident had nothing to do with his age.

In 2012, Mr. Robinson again received a "partially meets expectations" rating, based in part on a failure to meet sales goals. On May 8, 2013, he received a documented verbal warning based on poor sales, out of stock items, unacceptable and light shelf conditions, and poor communication with store management. One of the stores in Mr. Robinson's territory at that time had threatened to ask for Mr. Robinson to be removed from that store, and such a removal in itself is a terminable offense. Mr. Robinson again admitted at his deposition that this discipline had nothing to do with his age. At other times in 2013, Mr. Robinson performed well. In early 2014, he received a Circle of Champions award for his 2013 sales, and he earned a trip to California for improving sales over 2012, as well as a merit pay increase.

In March 2014, Mr. Robinson asked Gary Schmidt, a Human Resources representative, about early retirement. There is no evidence in the record that Mr. Schmidt spoke with any of Mr. Robinson's supervisors about this request. Mr. Robinson, however, states that Mr. Shiller was present when he asked Mr. Schmidt about early retirement.

Starting in April 2014, Mr. Robinson was assigned to a different territory and supervised by District Manager Jacqueline Moroz. In late May and early June, Mr. Robinson had at least two incidents where his stores had excessive out of code products and empty, mislabeled

displays.  On June 18, 2014, Ms. Moroz sent Mr. Robinson an email warning him that he was well below his sales objective.  Two days later, Ms. Moroz sent a note to Work Force Solutions, Mondelez's outside employer relations specialist who managed employment termination decisions with input from Mondelez's human resources department, in which she noted excessive out of code products in Mr. Robinson's stores.  On June 23, 2014, Mr. Robinson received a final written warning about excessive out of code products and unacceptable shelf conditions.  At least one store at which there were issues outlined in the final warning was a Walmart store to which Mr. Robinson had only recently been assigned, and which had had on-going issues that stretched back before Mr. Robinson took over responsibility for that store.  Mr. Robinson disagreed with the written warning and documented his disagreement.

In July 2014, Mr. Robinson began reporting to District Manager Claudia McCullough.  The Retail Merchandising Supervisor for the team was Colleen Thiel.  Ms. Thiel had concerns about store conditions in Mr. Robinson's territory, which she attributed to Mr. Robinson's poor ordering and poor communication with store personnel.  In Mr. Robinson's 2014 mid-year review, which was prepared by both Ms. Moroz and Ms. McCullough, he was rated as "off track" to meet his goals.  His review stated that he was ranked 199 out of 211 sales representatives in the region, 41 out of 42 in the market, and 11 out of 11 on his team.  His sales numbers for the first six months of 2014 were, at best, inconsistent, sometimes at or above expectations and other times below target.

On July 3, 2014, Ms. McCullough sent Mr. Robinson an email expressing concern with out of stock products, not servicing stores early enough, and poor communication with store managers.  On July 29, she sent another email complaining of poor shelf conditions.  Throughout

2013 and 2014, Mondelez also received a number of complaints from store managers about Mr. Robinson's performance.

On September 11, 2014, Ms. Thiel sent Mr. Robinson an email complaining about a number of the same issues complained of before, such as out of stock products, insufficient signage, and poor shelf integrity. Mr. Robinson disagreed with Ms. Thiel's characterization of the situation at at least two of the stores, and he attributed her mischaracterization to a lack of familiarity with the stores in question. On September 22, 2014, Mr. Robinson was suspended for poor performance, and on September 26, 2014, Mr. Robinson's employment was terminated for his poor performance. Mr. Robinson counters that his sales numbers in July and August were higher than his objectives, and that even after termination, he received a bonus for high September sales.

Mr. Robinson testified at his deposition that Ms. McCullough asked him at some point whether he planned to retire soon, and that she constantly checked up on his stores while not doing the same for five other sales representatives she supervised who did not meet their sales objectives in July and August 2014. He also testified that Ms. Thiel did the same. He complained that Ms. Moroz checked Mr. Robinson's newly assigned stores for out of code product shortly after he was assigned to them.

Mr. Robinson's position was later filled by someone under the age of 40. Mr. Robinson offers, in a document he created, three potential comparators who he says are under the age of 40: James Thomson, a senior service representative who had more than 1000 out of code products and did not receive discipline; Alyson Baehrle, a senior service representative who had out of code products in two stores and who had a store manager ask Mondelez to remove her from the manager's store; and Veronica Baez, a sales representative who reported to Ms.

4

McCullough and who was barred from servicing a particular store by a store manager until Ms. McCullough intervened.

Mr. Robinson then filed this suit, alleging violations of the Age Discrimination in Employment Act (ADEA) and the Delaware Discrimination in Employment Act.[1] After the completion of discovery, Mondelez filed a motion for summary judgment, seeking the dismissal of both counts.

**LEGAL STANDARD**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

---

[1] In addition to its arguments on the merits of Mr. Robinson's claims, Mondelez also raised arguments that he failed to exhaust his administrative remedies. Mr. Robinson responded to those arguments, and Mondelez conceded that its exhaustion arguments failed with respect to the ADEA claim. Later, at a Chambers conference, Mr. Robinson voluntarily withdrew his Delaware state law claim. Thus, the Court need not discuss the exhaustion arguments or the state law claim in this opinion.

Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

**DISCUSSION**

Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), is the appropriate analysis for summary judgment motions in cases alleging age discrimination where, as here, there is no direct evidence of discrimination.  *Torre v. Casio, Inc.,* 42 F.3d 825, 829 (3d Cir. 1994).  To show an inference of age discrimination the plaintiff must show that he "lost out because of his age." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996) (holding that the relevant issue is whether the evidence could support a reasonable factfinder's conclusion that a discriminatory animus served as the basis for the employer's decision); *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 355 (3d Cir. 1999).  Proof of a

*prima facie* case raises an inference of discrimination, and that inference has the force and effect of a rebuttable presumption. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). Under the *McDonnell Douglas* test, in order to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate by a preponderance of the evidence that he or she: (1) is at least 40 years of age; (2) was qualified for the position; (c) suffered an adverse employment action; and (d) younger employees were treated more favorably, creating an inference of age discrimination. *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 136 (3d Cir. 1997).

If a plaintiff establishes a *prima facie* case, the defendant then must "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008). If the defendant does so, the plaintiff then has the burden of showing that the defendant's proffered reasons for the adverse action are pretextual. At the summary judgment stage, the plaintiff must meet this burden by submitting "evidence which (1) casts doubt upon the legitimate reason proferred by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* (citing *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). The plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met–Pro Corp.,* 412 F.3d 463, 467 (3d Cir. 2005). Finally, in deciding a dispositive motion under the *McDonnell Douglas* framework, the Court recognizes that "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." *Doe*, 527 F.3d at 370.

7

Mondelez does not contend that Mr. Robinson failed to meet his burden in setting forth a *prima facie* case, but argues that Mr. Robinson's overall performance was consistently poor, citing a "tsunami of complaints about every aspect of his performance," and concluding that Mr. Robinson cannot rebut these legitimate, non-discriminatory reasons for termination. Mondelez recited in detail Mr. Robinson's performance issues, including, at various times, poor sales, out of stock items, unacceptable and light shelf conditions, and poor communication with store management.

Mr. Robinson first argues that there is sufficient evidence of pretext because he has identified three younger comparators who he claims had similar or worse infractions than he did but whose jobs were not terminated. Mr. Robinson has not, however, shown that that these individuals were actually similarly situated. "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk Southern Corp.,* 335 Fed. App'x. 220, 223 (3d Cir. 2009) (internal quotation marks omitted). Here, for instance, for each of the three supposed comparators Mr. Robinson identified, he only cited at most a small number of infractions (albeit sometimes involving a large number of out of code products), whereas Mondelez identified multiple issues concerning Mr. Robinson's performance over a period of several years. Also, two of the comparators identified by Mr. Robinson did not have the same job Mr. Robinson had and may not have had the same supervisor. Furthermore, Mr. Robinson offers no actual evidence of these employees' age, other than his own assumption that they were younger than he was. Based on this limited information, the Court cannot conclude that these proffered comparators were similarly situated such that any inferences can be drawn from the fact that their jobs were not terminated, while Mr. Robinson's was.

Mr. Robinson also notes that he received a performance award and a merit increase in the year immediately before the termination and that his sales numbers in the final few months of his employment were on target. However, "[p]retext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 528 (3d Cir. 1992). Moreover, Mr. Robinson does not provide any evidence that the litany of complaints that Mondelez had with his performance were unfounded, and it is clear that sales numbers were not the only concern that Mondelez had with Mr. Robinson's performance.

Mr. Robinson also cites statements by two decisionmakers that he claims show age bias, such as his supervisors asking him if he planned to retire. However, those stray comments, which were made outside of the context of the decision-making process and which are innocuous on their face, are not enough to overcome Mondelez's legitimate, non-discriminatory reasons for terminating Mr. Robinson's employment. *See, e.g., Salkovitz v. Pioneer Electronics (USA) Inc.*, 188 Fed. App'x. 90, 94 (3d Cir. 2006) (a handful of remarks about retirement plans and age were not strong enough to show pretext, especially when they were not directly connected to plaintiff's termination or to any discriminatory motive); *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 592 (E.D. Pa. 2013) (granting summary judgment when performance issues were well documented, even though plaintiff cited a "handful" of remarks made by her supervisor concerning her "age and retirement plans"); *Kelly v. Drexel Univ.*, 907 F. Supp. 864, 877 (E.D. Pa. 1995) (granting summary judgment despite a comment from a supervisor about retirement). Thus, Mr. Robinson has not met his burden to show that Mondelez's legitimate, non-discriminatory reason for terminating him were merely a pretext for age discrimination.

**CONCLUSION**

For the foregoing reasons, the Court will grant Mondelez's Motion for Summary Judgment.  An appropriate Order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge